UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| BLACKBOARD INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| DESIRE2LEARN INC., | ) | Case No. 9: 06 CV 155 |
| | ) | |
| Defendant. | ) | Judge Clark |
| | ) | |
| | ) | JURY TRIAL DEMANDED |
| | ) | |

## DESIRE2LEARN, INC.'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

Defendant Desire2Learn Inc. ("Desire2Learn") hereby responds to the Complaint filed by Plaintiffs Blackboard Inc. ("Blackboard") as follows.  Unless specifically admitted, all allegations in the complaint are denied:

### THE PARTIES

1.  Plaintiff Blackboard Inc. ("Blackboard") is a corporation organized under the laws of the State of Delaware, having its principal place of business at 1899 L Street NW, Washington, District of Columbia 20036.

**ANSWER:** Desire2Learn lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 1, and therefore denies same.

2.  Upon information and belief, defendant Desire2Learn ("D2L") is and has been a corporation organized under the laws of Canada, having its principal place of business at 72 Victoria Street South, Suite 401, Kitchener-Waterloo, Ontario, Canada N2G 4Y9.

**ANSWER:** Desire2Learn states that it is a corporation organized under the laws of the Province of Ontario with its principal place of business is located at 72 Victoria Street South,

Suite 401, Kitchener-Waterloo, Ontario, Canada N2G 4Y9. Desire2Learn denies the remaining allegations of this paragraph.

## JURISDICTION AND VENUE

3. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.* This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

**ANSWER:** Desire2Learn admits that this action purports to be an action for patent infringement, but denies that plaintiff is entitled to any recovery. While Desire2Learn does not contest subject matter jurisdiction, the allegations of this paragraph are legal conclusions for which no answer is required or given.

4. This Court has personal jurisdiction over D2L because D2L conducts business and has committed acts of patent infringement and/or has contributed to or induced acts of patent infringement by others in the State of Texas (as well as elsewhere in the United States).

**ANSWER:** Desire2Learn admits that it has customers in the State of Texas. While Desire2Learn does not contest personal jurisdiction, the allegations of this paragraph are legal conclusions for which no answer is required or given. Desire2Learn denies the remaining factual allegations in Paragraph 4.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400.

**ANSWER:** While Desire2Learn does not contest venue, the allegations of this paragraph are legal conclusions for which no answer is required or given.

## BLACKBOARD'S PATENT IN SUIT

6. On January 17, 2006, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 6,988,138 B1 entitled "Internet-Based Education Support System and Methods" (the "'138 patent"). A true and correct copy of the '138 patent is attached hereto as Exhibit A.

**ANSWER:** Desire2Learn admits that the face of United States Patent No. 6,988,138 B1 (the "'138 patent") is entitled "Internet-Based Education Support System and Methods" and

bears an issue date of January 17, 2006. Desire2Learn admits that a copy of the '138 patent was purported to be attached as Exhibit A to Blackboard's Complaint. Desire2Learn lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 6, and therefore denies same.

7. Blackboard is the owner of all right, title, and interest in and to the '138 patent by assignment, with full and exclusive right to bring suit to enforce the '138 patent, including the right to recover for past infringement.

**ANSWER:** Desire2Learn admits that the face of the '138 patent lists Blackboard as "Assignee." Desire2Learn lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 7, and therefore denies same.

## COUNT ONE

## D2L's INFRINGEMENT OF THE '138 PATENT

8. Blackboard realleges and incorporates herein the allegations of paragraphs 1 through 7 as if fully set forth herein.

**ANSWER:** Desire2Learn incorporates its responses to paragraphs 1 through 7 as though fully set forth.

9. The '138 patent is valid and enforceable.

**ANSWER:** Desire2Learn denies the allegations in this paragraph.

10. Upon information and belief, in violation of 35 U.S.C. § 271, D2L uses, offers to sell, and sells within the United States, and/or imports into the United States, products and services that infringe the '138 patent, including, but not limited to all D2L products based on the D2L learning system or platform, such as the D2L eLearning Technology Suite, which includes the D2L Learning Environment, Learning Repository and LiveRoom, and all services supporting these D2L products, such as hosting services, training services, help desk support services, implementation and customization professional services, and content services.

**ANSWER:** Desire2Learn denies the allegations in this paragraph.

11. Upon information and belief, in violation of 35 U.S.C. § 271, D2L also contributes to and/or induces infringement of the '138 patent.

**ANSWER:** Desire2Learn denies the allegations in this paragraph.

CHI2_650498.2

12. Upon information and belief, D2L has willfully infringed the '138 patent.

**ANSWER:**  Desire2Learn denies the allegations in this paragraph.

13. Upon information and belief, D2L's acts of infringement of the '138 patent will continue after service of this complaint unless enjoined by the Court.

**ANSWER:**  Desire2Learn denies the allegations in this paragraph.

14. As a result of D2L's infringement, Blackboard has suffered and will suffer damages.

**ANSWER:**  Desire2Learn denies the allegations in this paragraph.

15. Blackboard is entitled to recover from D2L the damages sustained by Blackboard as a result of D2L's wrongful acts in an amount subject to proof at trial.

**ANSWER:**  Desire2Learn denies the allegations of this paragraph.

16. Unless D2L is enjoined by this Court from continuing its infringement of the '138 patent, Blackboard will suffer additional irreparable harm and impairment of the value of its patent rights.  Thus, Blackboard is entitled to an injunction against further infringement.

**ANSWER:**  Desire2Learn denies the allegations in this paragraph.

## BLACKBOARD's PRAYER FOR RELIEF

Blackboard's prayer for relief does not state factual allegations, and thus no response is required.  Desire2Learn further denies that Blackboard is entitled to any relief.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense
### (Invalidity of the '138 Patent)

1.  Blackboard's claims are barred, in full or in part, because the claims of the '138 patent are invalid under 35 U.S.C. §§ 101, 102, 103, and/or 112.

### Second Affirmative Defense
### (Inequitable Conduct/Unenforceability of the '138 Patent)

2.  The '138 patent is unenforceable because Blackboard failed to disclose all non-cumulative, material prior art of which Blackboard was aware to the Patent Office during the prosecution of the '138 patent.

4

3. Blackboard had a continuing duty during the prosecution of the '138 patent to disclose all information Blackboard was aware of that was more material than and not merely cumulative over the prior art already before the Patent Office pursuant to 37 C.F.R. § 1.56.

4. More specifically, this duty of disclosure to the Patent Office was owed by (1) the purported inventors of the '138 patent (Robert L. Alcorn; Daniel E. Cane; Michael L. Chasen; Timothy R. Chi; Stephen R. Gilfus; Scott Perian; and Matthew L. Pittinsky), (2) each attorney or agent who prepared or prosecuted the application, including at least Wayne M. Kennard; Wilmer Cutler Pickering; Marc S. Kaufman; and Anthony R. Barkume, and (3) every other person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor, with the assignee, or with anyone to whom there is an obligation to assign the application, including at least Matthew Small, Lisa Sotir, and Deborah Everhard. *See* 37 C.F.R. § 1.56.

5. Upon information and belief, Blackboard, including every individual having a duty of disclosure, disclosed ***no prior art*** to the Patent Office during the prosecution of '138 patent.

**Prior Art of Acquired Entities**

6. Upon information and belief, Blackboard has acquired several companies in the e-learning community. Blackboard LLC merged with CourseInfo, LLC in 1998, forming Blackboard. Blackboard acquired MadDuck Technologies in 2000. Blackboard acquired AT&T Campuswide Access Solutions in 2000. Blackboard acquired CEI SpecialTeams in 2000. Blackboard acquired Prometheus in 2002. Blackboard acquired the SA Cash division of Student Advantage in 2003. Blackboard acquired WebCT, Inc. in 2006. These companies acquired are collectively referred to as the "Blackboard Acquisitions."

7.     Upon information and belief, each of the Blackboard Acquisitions developed, marketed, and/or sold e-learning products, collectively referred to as the "Undisclosed e-Learning Products."

8.     The Undisclosed e-Learning Products were sold or offered for sale, publicly used, or described in a written publication more than one year before the filing date of the '138 patent.

9.     The Undisclosed e-Learning Products are not cumulative of and are more material than the prior art before the Patent Office during the prosecution of the '138 patent.

10.    Blackboard was aware of the Undisclosed e-Learning Products during the prosecution of the '138 patent; the '138 patent did not issue until January 17, 2006.

11.    For example, Michael Chasen, one of the purported inventors of the patent, wrote a client letter which Blackboard posted on its website on or about August 7, 2006 that "***We certainly did not invent e-learning or course management systems***, and I am personally embarrassed that this is what some people thought Blackboard was claiming. ***Over the last decade and longer, fantastic advancements have been made throughout the e-learning industry by a diverse and passionate community of individuals and institutions*** and Blackboard is privileged to have been a contributor." (emphasis added).

12.    On information and belief, Blackboard's failure to disclose the Undisclosed e-Learning Products to the Patent Office was intentional and done with deceptive intent.

**The Prior Art IMS Specification**

13.    Upon information and belief, Blackboard LLC and later Blackboard Inc. consulted for and/or was substantively involved with the Instructional Management System Project within the National Learning Infrastructure Initiative of EDOCOM (the "IMS Project").

CHI2_650498.2

14. Upon information and belief, Blackboard personnel including Bob Alcorn (a purported inventor of the '138 patent), Mike Petit, and Udo Schuermann were contributors to the IMS project.

15. Upon information and belief, at least Bob Alcorn, Mike Petit, and Udo Schuermann participated on the IMS Technical team and provided input into the Specifications and prototype development discussed in the April 29, 1998 publication entitled "EDUCOM/NLII Instructional Management Systems Specifications Document Version 0.5." (the "IMS Specification").

16. Bob Alcorn, Mike Petit, and Udo Schuermann are listed on page 71 of the IMS Specification as contributors from Blackboard.

17. Additionally, upon information and belief, Mathew Pittinsky and Michael Chasen (both purported inventors of the '138 patent) were substantively involved in the IMS Project.

18. Matthew Small, the General Counsel for Blackboard, stated to the Association of Learning Technology ("ALT") on August 23, 2006, either verbatim or in substance, that "Blackboard people, including Mathew Pittinsky and Michael Chasen worked as consultants to IMS during the late 1990s. This was before Blackboard LLC acquired CourseInfo and formed Blackboard, Inc. and became a vendor. The dates can easily be checked. CourseInfo 1.0 as a system, and Blackboard's acquisition of it, predates the patent application."

19. The IMS Specification is not cumulative of and is more material than the prior art before the Patent Office during the prosecution of the '138 patent.

20. For example, the IMS Specification disclosed user profiles that allowed for a user to be assigned multiple predetermined user roles.

CHI2_650498.2

21. Page 19 of the IMS Specification states, in part, "An IMS Profile for a user may include both learner-specific and author specific information since an individual can be both a teacher in one context and a learner in another."

22. The IMS Specification further discloses that these user roles are used to allow various levels of access to and control of various course files.

23. Page 21 of the IMS Specification states, in part,

> In the IMS, as in many groupware products today, users participate in a group in the context of a particular role. For example, in the Biology 101 group, Mary Clark may be playing the role of a student. In this respect, she will only have access to those items that are granted to students. In addition, students are an identifiable group of people, so the teacher can send an e-mail to all of the students without having to address them one-by-one. In the Biology Study Group contained in the Biology 101 group, Mary plays the role of Group Leader. As such, she is able to invite new users into the group, add resources to the group, and otherwise manage the group.

24. The IMS Specification further discloses the use of a Security Service, in the form of IRole to provide these user roles and maintain access based on user privileges.

25. Page 21 of the IMS Specification states, in part, "The Security Service, in the form of IRole, provides the roles that we are describing here. The role assignment system takes advantage of the inheritance of roles to make the assignment of privileges as generic as possible while allowing access control to be maintained at a fine grained level."

26. The IMS Specification further discloses the integration of collaboration tools and controlling a user's access to those tools based on the user's predefined role.

27. Page 25 of the IMS Specification states, in part:

3.6.3.2.2.1 Integrating Collaboration Tools

Although there are no explicitly recognized Tool objects in the IMS Design specifications, it will be common to find specialized Resources such as notebooks, schedules, discussion lists, chat spaces, calculators, and other such objects that serve users in this capacity.

…

Discussion lists will use their knowledge of group membership to control what messages are listed. Tools may also grant or deny use privileges based on their ability to ascertain a user's role in the current group context.

28. The IMS Specification further disclosed the use of a Role Based Access Control Model to control user access.

29. Page 45 of the IMS Specification states, in part, "The IMS security service uses the Role Based Access Control (RBAC) Model designed by NIST. Access control to IMS objects using the NIST RBAC mechanism is provided by the security environment and by the IMS object."

30. Blackboard was aware of the IMS Specification during the prosecution of the '138 patent; the '138 patent did not issue until January 17, 2006.

31. On information and belief, Blackboard's failure to disclose the IMS Specification to the Patent Office was intentional and done with deceptive intent.

32. Blackboard thus violated the duty to disclose all information material to patentability required by 37 C.F.R. § 1.56 and the '138 Patent is unenforceable.

### Third Affirmative Defense
### (Express or Implied License/Patent Exhaustion)

33. Blackboard's claims for patent infringement against Desire2Learn are precluded to the extent that any allegedly infringing products are supplied, directly or indirectly to

Desire2Learn or by Desire2Learn to an entity or entities having an express or implied license to the patents-in-suit and/or that Desire2Learn's claims are precluded pursuant to the doctrine of patent exhaustion. By reason of the foregoing, Blackboard is barred from asserting its claims for patent infringement against products used, sold, or offered for sale by Desire2Learn.

## Fourth Affirmative Defense
### (Other Affirmative Defenses Based on Later Discovered Evidence)

34.    Desire2Learn reserves all affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure, the Patent Laws of the United States and any other defenses, at law or in equity, that may now exist or in the future be available based on discovery and further factual investigation in this case.

## COUNTERCLAIMS

1. These counterclaims are based upon the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.* This is also an action for declaratory judgment arising under 28 U.S.C. § 2201.

2. This Court has jurisdiction over these counterclaims under 28 U.S.C. §§ 1331 and 1338(a). Venue is proper under 28 U.S.C. §§ 1391 and 1400(b).

## COUNT I
### (PATENT INVALIDITY OF '138 PATENT)

3. Desire2Learn incorporates and realleges paragraphs 1 and 2.

4. The '138 patent, and more particularly the claims of the '318 patent alleged to be infringed, are invalid and of no effect for failure to comply with one or more requirements set forth in 35 U.S.C., including but not limited to Sections 101, 102, 103, and/or 112.

## COUNT II
### (INEQUITABLE CONDUCT/UNENFORCEABILITY OF THE '138 PATENT)

5. Desire2Learn incorporates and realleges paragraphs 1 - 4.

6. The '138 patent is unenforceable because Blackboard failed to comply with its duty of disclosure to the Patent Office during the prosecution of the '138 patent.

7. Desire2Learn incorporates and realleges paragraphs 2-32 of its Second Affirmative Defense.

## DESIRE2LEARN'S REQUEST FOR RELIEF

**WHEREFORE**, Desire2Learn prays that the Court enter a final and appealable judgment:

A. Denying Blackboard any relief whatsoever on its claims and dismissing Blackboard's Complaint with prejudice.

B. Declaring that the '138 patent is invalid under 35 U.S.C. §§ 101, 102, 103, and/or 112.

C. Declaring that the '138 patent is unenforceable due to inequitable conduct.

CHI2_650498.2

      D.       Awarding Desire2Learn its attorneys' fees and costs of suit; and

      E.       Awarding Desire2Learn such other and further relief as the Court may deem just and proper.

**Dated:  September 14, 2006**                                                                    Respectfully submitted,


                                                                 s/ Gregory S. Norrod_____
                                                                 Gregory S. Norrod

|  | |
|---|---|
|  | Jo Ben Whittenburg, Esq.<br>jbw@obt.com<br>Attorney-In-Charge<br>Texas Bar No. 21396700 |
| *Of Counsel*<br>Sharon R. Barner (Illinois Bar No. 6192569)<br>Gregory S. Norrod (Illinois Bar No. 6199391)<br>Jonathan R. Spivey (Texas Bar No. 24002989)<br>Jason J. Keener (Illinois Bar No. 6280337)<br>Foley & Lardner LLP<br>321 North Clark Street, Suite 2800<br>Chicago, Illinois 60610<br>Telephone: (312) 832-4500<br>Facsimile: (936) 832-4700 | Orgain Bell & Tucker, LLP<br>470 Orleans Street<br>P.O. Box 1751<br>Beaumont, Texas 77704-1751<br>Telephone: (409) 838-6412<br>Facsimile: (409) 838-6959<br><br>James J. Zeleskey<br>Texas Bar No. 22257700<br>5034-D Champions Drive<br>Lufkin, Texas 75901<br>Telephone: (936) 699-3516<br>Facsimile: (936) 699-4054<br><br>**Counsel for Defendant and Counterclaim Plaintiff Desire2Learn, Inc.** |

## Certificate of Service

The undersigned certifies that a true and correct copy of **Desire2Learn's Answer, Affirmative Defenses, and Counterclaims** was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who have consented to electronic service.

Dated: **September 14, 2006.**                                        s/ Gregory S. Norrod
                                                                                              Gregory S. Norrod